IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DICKSON PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-527 |
| | ) | |
| WELLS FARGO BANK, N.A., successor in interest to WACHOVIA BANK, N.A., | ) ) | By: Elizabeth K. Dillon United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case arises from a loan agreement between plaintiff Dickson Properties and defendant Wells Fargo Bank. Dickson claims that Wells Fargo violated the Bank Holding Company Act, 12 U.S.C. § 1841, *et seq.*, by requiring Dickson to enter into an unfavorable swap agreement in order to acquire a loan and that Wells Fargo breached covenants of good faith and fair dealing by inducing Dickson to default on its loan obligations. Before the court is Wells Fargo's motion to transfer venue to the Alexandria Division of the United States District Court for the Eastern District of Virginia. (Dkt. No. 17.) That motion has been fully briefed and was argued on May 1, 2017. For the following reasons, the court will deny Wells Fargo's motion.

I. BACKGROUND

Dickson and its parent company Providence Hall, as co-borrowers, acquired a $2.5 million dollar loan and a $500,000 line of credit from Wachovia Bank, a national banking association to which Wells Fargo is the successor in interest. Both loans were evidenced by promissory notes. As a condition of the loans, Wachovia required the co-borrowers to enter into

an interest rate swap, which was documented by a master agreement and confirmation.[1]
Providence Hall and Dickson also executed a number of security instruments to secure their obligations to Wells Fargo, including one that encumbered a property owned by Dickson in Dickson County, Tennessee (the Dickson County property). Wachovia listed an address in Roanoke, Virginia, on several of the loan documents.

The $500,000 promissory note matured on February 28, 2011. Leading up to that date, Wells Fargo represented to the co-borrowers that it would forbear collection on the note, and, relying on that assurance, Dickson did not pay down the principal balance, although it could have sold a property or obtained financing to do so. However, when the note matured, Wells Fargo declared it in default and demanded that the line of credit be repaid immediately. That declaration of default triggered a default on the $2.5 million note and a termination fee on the swap agreement.

In March 2011, Providence Hall filed for bankruptcy in the Eastern District of Virginia. Shortly thereafter, Dickson transferred the Dickson County property to Providence Hall and then later filed for bankruptcy itself. The bankruptcy court appointed Providence Hall's Chapter 11 Trustee as Dickson's designated representative. During Providence Hall's bankruptcy proceeding, the court approved the sale of several of Providence Hall's properties, including the Dickson County property, to satisfy debts owed to Wells Fargo. After the Dickson County property was sold as part of the administration of the Providence Hall case, the designee moved to dismiss Dickson's bankruptcy case, noting that its primary asset and sole source of income was the Dickson County property, that with the transfer of that property it had "no assets and no

---

[1] "A 'swap' is a contract between two parties ('counterparties') to exchange ('swap') cash flows at specified intervals, calculated by reference to an index." *Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 322 F.3d 1039, 1042 (9th Cir. 2002). The precise terms of the swap agreement are not pertinent to Wells Fargo's motion to transfer venue.

operations independent of Providence Hall," and that all of its creditors were identical to those of Providence Hall and would be paid through the Providence Hall estate. (Def.'s Mot. Transfer Venue Ex. V.) The court granted the motion and dismissed Dickson's proceeding.

On February 28, 2014, Providence Hall filed a complaint against Wells Fargo in the Circuit Court of Loudon County, Virginia, asserting similar claims to those at issue in this case. Four days later, Dickson, represented by the same counsel, filed its complaint in the Circuit Court of Roanoke City. Wells Fargo removed Providence Hall's case to the United States District Court for the Eastern District of Virginia and moved to dismiss. The court dismissed Providence Hall's complaint on res judicata grounds, finding that the bankruptcy court's sale orders precluded Providence Hall's claims. That decision was affirmed by the Fourth Circuit Court of Appeals in March 2016. *See Providence Hall Assocs. L.P. v. Wells Fargo Bank, N.A.*, 816 F.3d 273 (4th Cir. 2016). Dickson's complaint, however, was not served until October 18, 2016, roughly six months after the Fourth Circuit's decision and nearly two years after it was filed. Wells Fargo removed the case to this court and now seeks to transfer the case to the Eastern District.

II. DISCUSSION

Under 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Whether to transfer venue therefore turns on two questions: (1) whether venue is proper in the proposed transferee district, and (2) whether considerations of justice and convenience justify the transfer. *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003); 28 U.S.C. § 1404(a). Dickson does not dispute that the Eastern District of Virginia is a

3

district where its suit "might have been brought," 28 U.S.C. § 1404(a)—that is, a district where Dickson had the right to sue, "independently of the wishes of defendant." *Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 812 F. Supp. 2d 710, 719–20 (E.D. Va. 2011) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960)). Since it appears to the court that the Eastern District of Virginia could exercise personal jurisdiction over Wells Fargo and would be a proper venue for this action, *see Koh*, 250 F. Supp. 2d at 630, the dispositive question here is whether interests of convenience and justice suggest that transfer is appropriate.

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The Fourth Circuit has distilled this case-by-case consideration into four broad factors: (1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice. *Trs. Of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs.*, 791 F.3d 436, 444 (4th Cir. 2015). Whether to transfer an action under § 1404(a) is committed to the sound discretion of the district court, *One Beacon Ins. Co. v. JNB Storage Trailer Rental Corp.*, 312 F. Supp. 2d 824, 828 (E.D. Va. 2004), and the party seeking transfer bears the burden of showing that transfer is proper, *Schrader-Bridgeport Int'l, Inc. v. Cont'l Auto Sys. US*, No. 6:11-cv-14, 2012 U.S. Dist. LEXIS 18607, at *8 (W.D. Va. Feb. 15, 2012); *Pax, Inc. v. Veolia Water N. Am. Oprating Servs.*, 347 F. Supp. 2d 281, 283 (W.D. Va. 2004).

### A. Dickson's Choice of Venue

Ordinarily, "a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Trs. of the Plumbers*, 791 F.3d at 444 (quoting *Bd. of Trs. v.*

4

*Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007)). However, the appropriate deference afforded to the plaintiff's choice "varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011) (quoting *Bd. of Trs. v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1256 (E.D. Va. 1988)). When the chosen forum is not the plaintiff's home forum, the presumption in its favor generally "applies with less force." *Schrader-Bridgeport*, No. 6:11-cv-14, 2012 U.S. Dist. LEXIS 18607, at *8 (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)).

Although the Western District of Virginia is not Dickson's home forum, Dickson's choice is entitled to some deference here. To be sure, substantial parts of this case occurred elsewhere: Dickson's corporate owner and co-borrower operated in the Eastern District; Wells Fargo made its alleged misleading representations to attorneys in the Eastern District; Dickson declared bankruptcy in the Eastern District; and many of Dickson's operations, including the property that served as Dickson's primary source of income, were located in Tennessee. But this is not a situation where there is "no nexus between this District and plaintiff's underlying claim." *Glamorgan Coal Corp. v. Ratners Grp. PLC*, 854 F. Supp. 436, 438 (W.D. Va. 1993). Wachovia, the counterparty on the loan documents and the entity with whom Dickson negotiated the terms of the loan agreement and swap agreement that give rise to this case, listed a Roanoke address on the various loan documents. Since those negotiations and documents are central to Dickson's claims against Wells Fargo, Dickson's choice is not so unrelated to the underlying suit that the court may disregard it.[2]

---

[2] Wells Fargo cites *Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-4928, 2007 U.S. Dist. LEXIS 95240 (N.D. Cal. Dec. 14, 2007), for the proposition that the court may disregard a plaintiff's choice of forum where its conduct in cases of forum shopping. The court will discuss Wells Fargo's forum shopping allegations in the

**B. Convenience of Witnesses and Parties**

Wells Fargo asserts, and Dickson apparently agrees, that considerations of party and witness access and convenience are largely neutral in this case. (Def.'s Br. Supp. Mot. Transfer Venue 21, Dkt. No. 18.) In its opposition, Dickson identifies a number of witnesses that it will call at trial. Most of those witnesses reside in Tennessee, although others reside in Maryland, California, and the Eastern District of Virginia. The parties provide the court with no indication that litigating in this district will be substantially less convenient for either party or for the majority of the witnesses than litigating in the Eastern District. Thus the second and third factors do not weigh in any party's favor.

**C. Interests of Justice**

Wells Fargo's motion to transfer venue turns primarily on the final factor—the interests of justice. This factor is broad by design and encompasses the wide range of case-specific factors that could make the proposed transferee forum the more appropriate one. *Bd. of Trs.*, 702 F. Supp. at 1260. Wells Fargo asserts that Dickson's choice of forum should be disregarded and that this case should be transferred because its choice was the result of forum shopping. In Wells Fargo's estimation, the only explanation for Dickson's two-year delay between filing and serving its complaint while its parent company litigated a functionally identical claim in the Eastern District is that Dickson and Providence Hall meant to keep a case in reserve so, if the Eastern District ruled against Providence Hall, Dickson could have a second bite at the apple in a district that was not predisposed to rule against it. Relying on *Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-4928, 2007 U.S. Dist. LEXIS 95240 (N.D. Cal. Dec. 14, 2007), and *Wireless Consumers Alliance, Inc. v. T-Mobile USA, Inc.*, No. 03-cv-3711, 2003 U.S. Dist. LEXIS 26802 (N.D. Cal.

---

interests of justice section, below. *See Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 721, 723–24 (E.D. Va. 2005) (noting that the interests of justice are not served by forum shopping).

Oct. 14, 2003)—two cases that the Northern District of California transferred based in part on considerations of forum shopping—Wells Fargo argues that the court should transfer this case in order to thwart Dickson's attempt to avoid judges that have ruled against Providence Hall.

The court agrees with Wells Fargo's reading of *Foster* and *Wireless Consumers Alliance* and with the general proposition that evidence of forum shopping would support transfer to an appropriate district, *see Samsung Elecs. Co. v. Rambus Inc.*, 386 F. Supp. 2d 708, 721, 723–24 (E.D. Va. 2005). However, the court finds that the interests of justice do not require a transfer here and will therefore exercise its discretion not to transfer this case. As an initial matter, it is not clear to the court that Dickson choice was the result of forum shopping. Although it is certainly strange that Dickson waited for two years to serve its complaint while Providence Hall litigated similar claims against the same defendant in a neighboring district,[3] Dickson is a distinct corporate entity with the right to choose when and how it litigates its claims. Unlike Providence Hall, which is located in the Eastern District of Virginia, Dickson is a Delaware LLC that operates primarily in Tennessee. And importantly, at the time that Dickson filed its complaint, the Eastern District of Virginia had not dismissed Providence Hall's complaint, so there was no unfavorable ruling for Dickson to avoid. To be sure, Dickson's actions in this case are suspicious. But since Wells Fargo bears the burden of proving that transfer is proper, *see Pax*, 347 F. Supp. 2d at 283, the court will give Dickson the benefit of the doubt.

Furthermore, wherever the case is heard, Dickson cannot avoid the Eastern District of Virginia and Fourth Circuit's rulings in the Providence Hall case. The Fourth Circuit's holding that the bankruptcy court's sale orders precluded Providence Hall's claims against Wells Fargo is binding on this court. And since the preclusive effect of those sale orders was decided on the pleadings as a matter of law, this court is in as good a position as the Eastern District of Virginia

---

[3] Through the same counsel, no less.

7

to decide how the Fourth Circuit's analysis applies here.  Finally, transferring this case to the Eastern District of Virginia will not save on judicial resources: the Providence Hall litigation was dismissed at the pleading stage, so both courts are in the same position should the case move forward.  Accordingly, the court finds that the interests of justice do not require that this case be transferred.

### III.  CONCLUSION

For the foregoing reasons, the court will deny Wells Fargo's motion to transfer venue.

Entered: August 1, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge