IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DICKSON PROPERTIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:16-cv-527 |
| | ) | |
| WELLS FARGO BANK, N.A., successor in | ) | By: Elizabeth K. Dillon |
| interest to WACHOVIA BANK, N.A., | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Dickson Properties, LLC (Dickson) sues defendant Wells Fargo Bank (Wells Fargo), asserting claims for a violation of the Bank Holding Company Act, 12 U.S.C. § 1972 *et seq.*, and breach of contract. Wells Fargo moves to dismiss. It argues that Dickson's complaint fails to state a claim upon which relief can be granted, and so it must be dismissed under Federal Rule of Civil Procedure 12(b)(6). The court heard oral argument on the matter on September 14, 2017. Because the court concludes that res judicata bars Dickson's claims, Wells Fargo's motion will be granted and Dickson's complaint will be dismissed.

I. BACKGROUND

In March 2016, the Fourth Circuit issued an opinion in a case brought against Wells Fargo by Dickson's parent company, Providence Hall Associates (Providence Hall), a Virginia-based limited partnership. *Providence Hall Assoc. Ltd. P'ship v. Wells Fargo*, 816 F.3d 273 (4th Cir. 2016). Specifically, the court affirmed the dismissal of Providence Hall's Bank Holding Company Act and breach of contract claims against Wells Fargo on res judicata grounds. *Id.* at 276. The court reasoned that the litigation of sale orders in bankruptcy court by Providence Hall's Chapter 11 bankruptcy trustee precluded Providence Hall from later bringing claims that

called into question the debt those sale orders served to extinguish. This case is, in all relevant aspects, identical, with one twist: it involves a bankruptcy "designee" rather than a trustee.

Dickson is a wholly owned subsidiary of Providence Hall, and the two entities were jointly liable on their debts to Wells Fargo. (Dickson designee order, Dkt. No. 11-17 at 3.) Dickson alleges that, during loan agreement negotiations with Wells Fargo, Wells Fargo indicated it would not provide a loan unless Dickson also agreed to enter into an interest rate swap agreement as a necessary condition of the loan. (Compl. ¶¶ 58–60, Dkt. No. 1-2.) Dickson agreed to do so, and the parties executed a loan agreement on February 16, 2006. (*Id.* ¶ 4.) Dickson's $500,000 loan was to come to maturity on February 28, 2011. (*Id.* ¶ 7.) According to Dickson, Wells Fargo falsely represented to it that a forbearance agreement was forthcoming, even though the bank had no intention of renewing the note or forbearing from collecting it. (*Id.* ¶¶ 42–44.) A forbearance agreement never came, and on March 4, 2011, Wells Fargo informed Dickson that its line of credit must be fully paid off. (*Id.* ¶ 45.) Shortly over a week later, Wells Fargo declared Dickson in default under the master loan agreement. (*Id.* ¶ 51.)

That same month, Providence Hall, Dickson's parent company, filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia. (Dkt. No. 11-24.) Providence Hall did not list any claim against Wells Fargo as an asset on its bankruptcy schedules. (Case No. 11-11656-BFK, Dkt. No. 1, at Schedule H.) The bankruptcy court granted Providence Hall's sale motions and required that all net sale proceeds be paid to Wells Fargo. (Dkt. No. 11-13 at 2–3; Dkt. No. 11-18 at 4; Dkt. No. 11-21 at 2–3.)

Two months later, in May 2011, Dickson executed and recorded a quitclaim deed that transferred its interest in Dickson County, Tennessee, property to Providence Hall for no consideration. (Dkt. No. 11-17 at 1.) Because the property was subject to a lien in favor of

Wells Fargo, the quitclaim deed allowed Dickson to obtain the benefit of an automatic stay. *(Id.)*

Dickson likewise filed a Chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of Virginia in December 2011. (Dkt. No. 11-17 at 2.) Like Providence Hall, Dickson did not list any claim against Wells Fargo as an asset on its bankruptcy schedules. (Dkt. No. 11-22 at 2; Dkt. No. 11-17 at 1.) The bankruptcy court authorized Marc Albert (Albert), whom it had already appointed as Providence Hall's Chapter 11 trustee, to act as Dickson's designated representative, or "designee." (Dkt. No. 11-17 at 2–3.)

Albert received the bankruptcy court's approval in August 2012 to sell the Dickson County property in order to apply the net sale proceeds to the Wells Fargo debt. (Dkt. No. 11-13 at 2–3.) That fall, Providence Hall and Dickson moved separately to dismiss their respective bankruptcy cases, as the debt to Wells Fargo had been paid in full. (Dkt. No. 11-23 at 1–2.) In its motion, Dickson stated that it had no assets, operations, or creditors independent of Providence Hall, and that all of Dickson's creditors would be paid from the Providence Hall bankruptcy estate. (Dkt. No. 11-22 at 2–4.) The court granted the motions in December 2012. (Dkt. No. 11-23.)

On February 28, 2014, Providence Hall filed a complaint against Wells Fargo in state court, in Loudoun County. (Dkt. No. 11-24.) Four days later, Dickson filed an almost identical complaint in the circuit court for Roanoke City. (Dkt. No. 1-2.) The cases were removed; Dickson's removed case is the instant case. The District Court for the Eastern District of Virginia dismissed the Providence Hall complaint on res judicata grounds because of the bankruptcy court's sale orders allowing Providence Hall to pay Wells Fargo in full. *Providence Hall Assoc. Ltd. P'ship v. Wells Fargo*, No. 1:14-cv-352, 2014 WL 12704845 (E.D. Va. May 20, 2014). The Fourth Circuit unanimously affirmed dismissal of the Providence Hall complaint on

res judicata grounds.  *Providence Hall Assoc. Ltd. P'ship*, 816 F.3d at 276.

Wells Fargo urges the court to dismiss the Dickson complaint for the same reason. (Def.'s Mot. to Dismiss, Dkt. No. 11.)  Dickson counters that res judicata cannot apply because, while trustees are in privity with debtors, designees are not.  (Pl.'s Resp. in Opp'n to Mot. Dismiss (Pl.'s Opp'n), Dkt. No. 15.)

## II.  DISCUSSION

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint to determine whether the plaintiff has properly stated a claim.  *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To avoid dismissal, the "complaint must establish 'facial plausibility' by pleading 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Basically, the plaintiff must "nudge [his] claims across the line from conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In determining whether the plaintiff has met this plausibility standard, the court must take as true all well-pleaded facts in the complaint and in any documents incorporated into or attached to the complaint.  *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).  Further, it must "draw[] all reasonable factual inferences from those facts in the plaintiff's favor," *Edwards*, 178 F.3d at 244, but it need not "accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments."  *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  If there is a conflict between the bare allegations of the complaint and any attached or incorporated document, then the document prevails.  *See*

4

*Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991).

## B. Consideration of Extrinsic Documents

Wells Fargo attached 25 bankruptcy court documents to its motion to dismiss and its reply, and Dickson attached three bankruptcy court documents to its opposition to the motion to dismiss.[1] While generally, a court should not consider documents outside of the complaint on a Rule 12(b)(6) motion, *see* Fed. R. Civ. P. 12(d), it "may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396–97 (4th Cir. 2006). Wells Fargo argues that the court may consider the exhibits because they were integral to the complaint, their authenticity is not disputed, and they are matters of public record. (Dkt. No. 12 at 3 n.2.) During the hearing on Wells Fargo's motion to dismiss, Dickson agreed that the court may consider all of the exhibits for these reasons.

The exhibits do not raise new claims for the first time. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Nor do the exhibits reflect Wells Fargo's "unilateral . . . version of contested events," or "contested events" at all. *See Goines v. Valley Cmty. Serv. Bd.*, 822 F.3d 159, 167–68 (4th Cir. 2016). Thus the court will consider the documents, though some or most may make no difference in its resolution of Wells Fargo's motion.

---

[1] Wells Fargo's exhibits include: the Wells Fargo loan agreement and notes; the Dickson, Blount, and Davidson County deeds of trust; the Florida mortgage; the security agreement, swap agreement, and swap confirmation; the March 15, 2011 default letter; Providence Hall's sale motions and the related orders; Providence Hall's and Dickson's proof of claims, the court's order approving the Chapter 11 trustee; the Dickson designee order; the sanctions order and opinion against Providence Hall's (now Dickson's) counsel; the Dickson motion to dismiss and dismissal order; the Providence Hall litigation complaint; and the schedule to the master agreement. Dickson's exhibits include: a copy of the Dickson designee order; the Providence Hall dismissal order; and Dickson's creditors list.

## C. Dickson's Claims Are Barred by Res Judicata Due to the Bankruptcy Court Sale Orders.

Wells Fargo argues that Dickson's complaint should be dismissed on res judicata grounds because of the bankruptcy proceeding sale orders. The court agrees. If later litigation "arises from the same cause of action as the first," res judicata bars litigation of every matter that was actually adjudicated as well as "every claim that might have been presented" in that first litigation. *See In re Varat Enter., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citing *Nevada v. United States*, 463 U.S. 110, 129–130 (1983)). For res judicata, or claim preclusion, to apply, "there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Providence Hall Assoc. Ltd. P'ship*, 816 F.3d at 276 (citing *Pueschel v. United States*, 469 F.3d 345, 354–55 (4th Cir. 2004)). The Supreme Court has acknowledged that "although there are clearly constitutional limits" on "privity," it may apply to "various relationships between litigants that would not have come within the traditional definition of that term." *Richards v. Jefferson Cty.*, 517 U.S. 793, 798 (1996). While this case centers on privity, the court addresses each requirement in turn.

### 1. Final orders on the merits

First, Dickson argues that the Providence Hall sale orders were not final orders on the merits of Dickson's lender liability claims. But res judicata does not require final orders on the merits of Dickson's claims; it merely requires a final order on the merits in a prior suit, s*ee Pueschel*, 469 F.3d at 354, which we have here. The Fourth Circuit has specifically held that bankruptcy sale orders are final orders on the merits. *Providence Hall*, 816 F.3d at 277. Indeed, the Fourth Circuit dedicated the majority of its *Providence Hall* opinion to explaining why the sale orders satisfied the first prong of res judicata. *See id.* at 277–82. In so doing, the court

6

rejected six arguments asserted by Providence Hall, emphasizing that (i) "Trustee Albert could have litigated the extent of PHA's [Providence Hall's] obligations to Wells Fargo rather than move to sell estate property," and (ii) "PHA's present claims are transactionally related to the facts underlying the sale orders." *Id.* at 281–82. Here, Providence Hall's obligations *are* Dickson's obligations. (*See* Dkt. No. 11-22 at 2–3) ("[Dickson] has no assets and no operations independent of Providence Hall"; "[A]ll of [Dickson's] creditors are identical to the creditors of Providence Hall, and those creditors will be paid from the Providence Hall estate.") It is without question, moreover, that Dickson's present claims are transactionally related to the facts underlying the sale orders. So the sale orders, as final judgments on the merits, satisfy the first prong of res judicata.

### 2. Identity of Claims

Second, there is an identity of claims between the sale orders and Dickson's current suit. The Fourth Circuit follows the "transactional" approach when analyzing this prong and looks to whether "the sale orders arose out of the same nucleus of facts" as Dickson's claims in this case. *See Providence Hall*, 816 F.3d at 282. As mentioned above, there is no question—and Dickson does not target its arguments—as to the fact that the claims are transactionally related. That the sale orders arise from the same nucleus of fact is the very reason why allowing Dickson's claims to move forward would upend the purposes of both res judicata and Chapter 11 bankruptcy: "[I]t would be counterproductive to liquidate the bankruptcy estate's property to pay off debts . . . only to later allow claims to be brought against that creditor regarding the now-satisfied debts." *Id.*

### 3. Identity of parties or their privies

This case pivots on the third element of res judicata: whether there is "an identity of

parties or their privies in the two suits." *Pueschel*, 369 F.3d at 354. The Fourth Circuit was clear that Albert, as Providence Hall's Chapter 11 trustee, was the "representative of [Providence Hall's] bankruptcy estate" and thus Providence Hall's privy for res judicata purposes. *Providence Hall*, 816 F.3d at 282. The question this court faces is whether Albert, as Dickson's "designee," was Dickson's privy for res judicata purposes. Dickson argues that Albert did not adequately represent its interests as to the sale orders and so res judicata cannot apply.[2] Wells Fargo contends that, because Dickson is a wholly owned subsidiary of Providence Hall, Albert adequately represented Dickson's interests as to the sale orders. The court concludes that res judicata applies in this case to bar Dickson's claims.[3]

Res judicata may bind a non-party to a previously litigated case where the nonparty "was adequately represented by someone with the same interests who was a party to the suit." *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008) (internal quotations and citation omitted). Examples of suits that fall into this category are those "brought by trustees, guardians, and other fiduciaries." *Taylor*, 553 U.S. at 894. This would be an easy case, then, had a Dickson trustee been appointed. Instead, the bankruptcy court reasoned that it "does not see the need for the appointment of a Chapter 11 Trustee in this case. Rather, the simple expedient of amending the Order of Designation to make Mr. Albert, in his capacity as Chapter 11 Trustee of the

---

[2] Dickson also argues that it is too early in the litigation for the court to resolve the question of privity. (Pl.'s Opp'n 13.) The court disagrees. In the cases Dickson relies upon, the courts based their concerns as to timing on the fact that the initial round of litigation was not yet complete. *See Johnson & Johnson v. Coopervisions, Inc.*, 720 F. Supp. 1116 (D. Del 1989); *Fluke Elecs.Corp. v. CorDEX Instruments, Inc.*, No. C12–2082JLR, 2013 WL 2468846 (W.D. Wash. June 7, 2013). Here, the initial litigation is complete.

[3] Because the court agrees that res judicata applies in this case, it does not reach Wells Fargo's arguments regarding judicial estoppel, waiver, or the anti-tying statute of limitations. These three arguments may well present alternate grounds on which Dickson's claims could properly be dismissed.

8

Providence Hall bankruptcy estate, [Dickson's] designee[4] will suffice."  (Dkt. No. 11-17 at 3.)
Thus this court must grapple with the question of nonparty preclusion as it relates to a
bankruptcy "designee."

      *a. Same interests*

In the absence of any case law illuminating the role of or consequences that flow from
appointing a "designee," the court turns first to whether Albert, as Providence Hall trustee and
Dickson designee, shared "the same interests" with Dickson.  In *Copperweld Corp. v.
Independence Tube Co.*, the Supreme Court held that a parent corporation and its wholly-owned
subsidiary are incapable of conspiring to violate federal antitrust law because a "parent and its
wholly owned subsidiary have a complete unity of interest."  467 U.S. 752, 771 (1984); *see also
Am. Needle, Inc. v. NFL*, 560 U.S. 183, 190 (2010) (reaffirming *Copperweld*'s reasoning).  The
Court reasoned that:

> Their [a parent's and its wholly owned subsidiary's] objectives are
> common, not disparate; their general corporate actions are guided
> or determined not by two separate corporate consciousnesses, but
> one.  They are not unlike a multiple team of horses drawing a
> vehicle under the control of a single driver.  With or without a
> formal "agreement," the subsidiary acts for the benefit of the
> parent, its sole shareholder.

*Copperweld*, 467 U.S. at 771.  Other circuit courts, including the Fourth Circuit, have applied the
reasoning of *Copperweld*.  *See, e.g.*, *Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 223 (4th Cir.
2004) (holding that a parent corporation and its wholly owned subsidiary cannot conspire to
violate the Sherman Act); *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 367 (3d Cir. 2007)
("[P]arents and their wholly owned subsidiaries have the same interests because all of the duties

---

[4] Fed. R. Bankr. P. 9001(5) permits a bankruptcy court to appoint a person to perform acts required by the bankruptcy rules when a debtor is not a natural person.  This person is often referred to as the debtor's "designee." *See In re Red River Energy, Inc.*, 409 B.R. 163 (Bankr. S.D. Tex. 2009).

9

owed to the subsidiaries flow back up to the parent[and] the only interest of a wholly owned subsidiary is in serving its parent.") District courts in Virginia, moreover, have extended *Copperweld*'s reasoning beyond the antitrust context. *See Field v. GMAC LLC*, 660 F. Supp. 2d 679, 689 (E.D. Va. 2008) (holding that a corporation and its wholly owned subsidiary cannot legally conspire under Virginia Code §§ 18.2–499 and 500); *Saliba v. Exxon Corp.*, 865 F. Supp. 306, 313 (W.D. Va.1994) (same).

The reasoning of the *Copperweld* line of cases compels the conclusion that Albert and Dickson's interests as to the sale orders were the same. As a wholly owned subsidiary, Dickson's interest regarding the sale orders was in serving its sole parent, Providence Hall. *See Copperweld*, 467 U.S. at 771; *In re Teleglobe Commc'ns Corp.*, 493 F.3d at 367; *see also Goodman v. Praxair, Inc.*, 494 F.3d 458, 473–74 (4th Cir. 2007) (holding that wholly-owned subsidiary had fair notice it was intended target of suit against its parent because "their identity of interest eliminates any worry [subsidiary] was caught by surprise"). As the parent, Providence Hall's interest in Dickson was part of its bankruptcy estate. *See Kreisler v. Goldberg*, 478 F.3d 209, 214 (4th Cir. 2007). That is not to say that, more generally, Dickson's interest could never diverge from that of Providence Hall. For example, the Fourth Circuit has held that a parent corporation's interest in its subsidiary does not necessarily give it a direct interest in the subsidiary's assets. *Kreisler*, 478 F.3d at 214. Dickson, however, had "no assets and no operations independent of Providence Hall." (Dkt. No. 11-22 at 2.) Furthermore, the bankruptcy court noted in a footnote of its order appointing Albert as designee that because "there is some *potential* for conflict between Mr. Albert as Chapter 11 Trustee . . . and [as] designee," the court's "denial of the Motions to appoint a Trustee will be without prejudice to the right of any creditor or party in interest to file a Motion to appoint a Chapter 11 Trustee other than Mr.

Albert." (Dkt. No. 11-17 at 4 n.3) (emphasis added). But no such motion was ever filed.

During the hearing before this court, Dickson argued that a "designated representative" does not "represent" the debtor in bankruptcy proceedings. The court takes note of the lack of case law on this question. Under these facts, however, no persuasive argument has been presented to the court to suggest that Dickson's interest as to the sale orders somehow diverged from that of its parent company, where all of Dickson's creditors were "identical to the creditors of Providence Hall," and those creditors were "paid from the Providence Hall estate." (Dkt. No. 11-22 at 3.)

### b. *Adequate representation*

Having established that Dickson and its designated representative, Albert, shared the same interests, the court turns to whether Albert adequately represented Dickson as to the sale orders. *See Taylor*, 553 U.S. at 894 (reasoning that res judicata may bind non-party where it "was adequately represented by someone with the same interests who was a party to the suit.") Representation is "adequate" for nonparty preclusion "only if (at a minimum) one of . . . two circumstances is present": there must be "either special procedures to protect the nonparties' interests or an understanding by the concerned parties that the first suit was brought in a representative capacity." *Taylor*, 553 U.S. at 897 (citing *Richards*, 517 U.S. at 801–02).[5] Wells Fargo argues that both circumstances are present. The court concludes that the presence of the latter circumstance—the parties' understanding—is sufficient for res judicata to apply here. That is, it is clear from the second circumstance that the sale orders were "brought in a representative capacity," *Taylor*, 553 U.S. at 897, and that the parties must have had such an understanding.

---

[5] Dickson appeared to argue in its briefing and during the hearing that Dickson must have "controlled" the prior action for the sale orders to have preclusive effect. (*See* Pl.'s Opp'n 9, 12–13.) Control is not a requirement of res judicata, *see Taylor v. Sturgell*, 553 U.S. 880, 894–95 (2008), though it may be an example of one of the "limited circumstances [where a nonparty] has his interests adequately represented by someone with the same interests who is a party," *Richards*, 517 U.S. at 798–99.

11

As to the second circumstance, neither *Taylor* nor *Richards* "spell out the understanding necessary for a party to act in a representative capacity for purposes of nonparty preclusion." *Amos v. PPG Indus, Inc.*, 699 F.3d 448, 452 (6th Cir. 2012). Some circuits, including the Tenth Circuit, "assume[] that a unilateral understanding by the party in the first action" is sufficient, *id.* (citing *Pelt v. Utah*, 539 F.3d 1271, 1289 (10th Cir. 2008)), while the Third Circuit "assume[s] that the understanding must be bilateral," *id.* (citing *Nationwide Mut. Fire Ins. Co. v. George v. Hamilton, Inc.*, 571 F.3d 299, 313 (3d Cir. 2009)). No circuit has taken up the question directly. *Id.*

Regardless of whether a unilateral or bilateral test is used, there is "understanding" that the sale orders were brought by Albert in a representative capacity. First, in its bankruptcy case, Dickson filed its motion to dismiss by the debtor, by its designee (Albert), by counsel. (Dkt. No. 11-22 at 4.) Because counsel for the designee must have those same shared interests as the entity for which Albert was designee, Dickson effectively had counsel to represent its interests. *Cf. Richards*, 517 U.S. at 798 (cautioning against precluding "the rights of strangers" to initial proceedings). Second, during Providence Hall's bankruptcy case and without the court's approval, Dickson voluntarily transferred a shopping center, its sole asset, to Providence Hall by quitclaim deed. (*See* Dkt. No. 11-22 at 2.) Because the center was subject to Wells Fargo's lien, Dickson's transfer for no consideration allowed Dickson to obtain the benefit of an automatic stay. (*Id.*) Further, counsel for Dickson conceded during the hearing before this court that Dickson chose not to amend or file additional schedules. The court thus agrees with Wells Fargo's characterization of the parties' understanding, that Dickson chose to "work[] with Providence Hall to sell the properties and ensure that all claims . . . were paid." (Dkt. No. 21 at 8; *see also* Dkt. No. 11-22 at 3.) Because Dickson and its designee shared the same interests,

and Dickson was adequately represented with respect to those interests, the final requirement of res judicata, privity, is satisfied. *See Taylor*, 553 U.S. at 894.

### 4. *Grausz* factors

With the three requirements of res judicata satisfied, the court considers two practical concerns before dismissing Dickson's claims. The Fourth Circuit directs courts to assess, before such a dismissal, whether a party or its privy knew or should have known of its claims at the time of the first action, and whether the court in the first suit was an effective forum to litigate the relevant claims. *Grausz v. Englander*, 321 F.3d 467, 473 (4th Cir. 2003). Here, there is no question that Albert knew of Dickson's claims at the time of the first action, particularly in light of the identical nucleus of fact underlying Providence Hall's and Dickson's claims. Furthermore, the Fourth Circuit rejected Providence Hall's argument that the bankruptcy court was an ineffective forum, reasoning that the question "is not whether [Providence Hall] could effectively litigate[,] but whether the trustee could," and Providence Hall "offers no argument that the trustee could not effectively litigate in the bankruptcy court." 816 F.3d at 283. Even assuming the question before this court were whether Dickson, rather than the designee, could effectively litigate, Dickson could have taken remedial action—such as seeking a Dickson trustee appointment—had it believed Albert was acting improperly. (*See* Dkt. No. 11-17 at 4 n.3 (preserving "the right of any creditor or party in interest to file a Motion to appoint a Chapter 11 Trustee other than Mr. Albert").) Dickson never did so. The two *Grausz* factors are satisfied.

Ultimately, "it would be counterproductive to liquidate the bankruptcy estate's property to pay off debts owed to a creditor—bringing about the close of bankruptcy proceedings—only to later allow claims to be brought against that creditor regarding the now-satisfied debts." *Providence Hall*, 816 F.3d at 282. That the question involves a "designee" rather than a trustee

13

does not alter the conclusion that res judicata bars Dickson's claims. This conclusion comports with the "fundamental purpose" of Chapter 11 bankruptcy, "rehabilitation of the debtor," *In re White Mountain Mining Co., L.L.C.*, 403 F.3d 164, 170 (4th Cir. 2005), as well as "the important interest in the finality of judgments in a bankruptcy case," *Hendrick v. H.E. Avent*, 891 F.2d 583, 587 n.9 (5th Cir. 1990)).

### III. CONCLUSION

For the foregoing reasons, Wells Fargo's motion to dismiss will be granted. An appropriate order will be entered.

Entered: September 28, 2017.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge